Susan L. HALL, Petitioner–
Respondent,

v.

Robert L. HALL, Respondent–
Appellant.

No. SD 30464.

Missouri Court of Appeals,
Southern District,
Division One.

June 15, 2011.

Sanjay K. Varma, Edmundson, Richardson, Innes and Warren, Poplar Bluff, MO, for Appellant.

Joy J. Ferguson and L. Dwayne Hackworth, Hackworth, Hackworth & Ferguson, LLC, Piedmont, MO, for Respondent.

Scott D. Dale, Bloodworth, Bloodworth and Dale, Poplar Bluff, MO, Guardian Ad Litem.

GARY W. LYNCH, Judge.

Robert L. Hall ("Father") appeals the trial court's judgment modifying the custody arrangement between him and Susan L. Hall ("Mother"). Father contends that the trial court erred in modifying the parties' joint physical custody of their son to sole physical custody in Mother because Mother failed to demonstrate a substantial change in circumstances supporting the modification and because the wishes of a minor child alone cannot constitute a substantial change in circumstances; Father also contends that the trial court erred in overruling Father's motion to dismiss because Mother failed to demonstrate the required substantial change in circumstances. Finding that Father invited the alleged errors of which he now complains, we affirm.

### Factual and Procedural Background

We view all evidence and inferences in the light most favorable to the trial court's judgment. *Meyer v. Block*, 123 S.W.3d 316, 321 (Mo.App.2003).

■ The marriage between Father and Mother was dissolved on May 31, 2002. In the original dissolution decree, Father was given primary physical custody[1] of the

---

1. Father failed to provide this Court with the original dissolution decree. As appellant, it was Father's responsibility to compile and file with this Court all of the documents necessary to our resolution of his claims. *See* Rule 81.12(c). However, both Mother and Father state in their briefs that, initially, Father was granted "primary physical custody" subject to Mother's periods of visitation. Facts asserted in one party's brief and admitted to be true in

couple's two minor children, T.H., born May 14, 1993, and R.H., born April 12, 1994. Mother received a liberal visitation schedule, and Mother and Father were awarded joint legal custody. This custody arrangement was modified by agreement of both parties on September 21, 2004, wherein Mother and Father each received joint legal and physical custody of both children, the latter of which was to be exercised by each party in alternate weeks.

Mother filed a motion to modify on May 25, 2007, in which she sought sole physical custody of both children. In her motion, Mother alleged "substantial and continuing changes in the conditions and circumstances of the parties and their minor children[,]" specifically that both children had become teenagers; both children were involved in more extracurricular activities, which required more time from each parent; Father had changed jobs, which required that he have more travel time and work some weekends, and therefore Father had less time to care for the children; both children wanted to live primarily with Mother and terminate the alternating-week schedule; Father had become "unreasonable and uncooperative" with regard to the visitation schedule; Mother had changed jobs and was better able to care for the children; and Father was "intentionally attempting to alienate the minor children's affections from Mother[.]"

An evidentiary hearing on Mother's motion commenced on May 19, 2008. Both children testified that they wanted to reside primarily with Mother; R.H., in particular, testified that he does not like "hauling [his] junk [from] one place to another" every week and that "it feels more like home whenever [he is] with [Mother][.]" R.H. further testified that he had wanted to live with Mother for seven years, since he was last in her primary custody, and that Mother is more cooperative regarding visitation than Father. T.H. testified that Father had been taping his conversations with her and telling her that Mother would not have time for her.

Additionally, Mother presented the testimony of the children's guardian ad litem, three members of Mother's church, the children's counselor, and a psychotherapist. Church member Clyde Chatland testified that he counseled the children regarding statements Father had made, particularly a statement that they would not go to heaven if they did not listen to Father's custodial demands. Chatland also testified that both children expressed a desire to live primarily with Mother. Janet Li, the children's counselor, testified that she diagnosed both children with adjustment disorder, the result of their parents' divorce and subsequent remarriages, Mother's schooling, and new adopted siblings. Li stated that she did not believe the alternating-week schedule was working for either child as "it is too hard on them to go back and forth[.]" Psychotherapist Roxanne Wiggs, who conducted two home studies on Mother's home in connection with her adoption of two Russian children, testified that both T.H. and R.H. get along well with their adopted siblings. T.H. also testified as to the positive relationship she and her brother have with their adopted siblings.

The trial court did not complete the evidentiary hearing that day; rather, it took the matter under advisement and placed the case on the docket for a future

---

the opposing party's brief may be considered part of the record. *Northland Ins. Co. v. Schubert,* 923 S.W.2d 512, 514 (Mo.App. 1996). An award of "primary physical custody" is not a recognizable custodial determination in Missouri. *Robertson v. Robertson,* 228 S.W.3d 624, 626 (Mo.App.2007).

hearing on all remaining issues. Before the continued hearing could be completed, however, the parties entered into a stipulation, which was filed with the trial court on July 7, 2008. It provided that on a trial basis, initially through September 30, 2008, both children would reside with Mother, and Father would have visitation at "the choice and discretion of the minor children." Ultimately, however, the matter was set for further hearing on April 14, 2009, by agreement of the parties. Throughout this eleven-month period between hearing dates, the children resided with Mother.

At the continued hearing, Li again testified; Mother and Father testified, as well. Li stated that both children had fared well living primarily with Mother; she also stated that the children had informed her that Father failed to show up for some scheduled visits and engaged in very little phone contact. Mother also testified that Father did not show up for some of his scheduled visits and stated that, although she did nothing to prevent the children from visiting with Father either in person or via telephone, the children nevertheless had very little contact with Father throughout the trial period. Mother further testified that both children get along well with their adopted siblings as well as with her new husband. Mother stated that her schedule had changed, and she was working ten twelve-hour shifts per month as a nurse practitioner; as a result, Mother had more time to devote to her children. Father contested the effort he expended to see his children during the trial period but did state that his work schedule had changed and that in addition to working full-time at an area hospital, he

was picking up six to ten extra twelve-hour shifts per month in the emergency room.

On May 4, 2009, the trial court issued its written decision, wherein it stated that it saw "no substantial change in circumstances to modify the court's previous award of joint legal and joint physical custody." It then went on to list the children's busy academic and extracurricular lives, Father's busy work schedule, and both children's continued expressed desire to reside primarily with Mother as the reasons behind its "decision to place primary custody with [Mother] in the best interest of said children."[2] The trial court then acknowledged its desire "to restore [F]ather and children to their close bond they obviously previously enjoyed." The trial court attempted to accomplish both objectives by changing the joint physical custody parenting schedule from alternating weeks with each parent to Father having the children on alternating weekends, from 5 p.m. to 8 p.m. every Tuesday and Thursday, and for three separate two-week periods during the summer, with Mother having the children all other times. The trial court ordered Mother's counsel to prepare a proposed formal judgment.

Before Mother's counsel did so, however, Father filed a motion to present additional evidence on September 23, 2009, which was shortly thereafter denied by the trial court. Father filed a motion to reconsider on October 21, 2009, based upon T.H.'s change of heart; T.H. had decided, in the interim, that she preferred to live primarily with Father. The trial court sustained the motion to reconsider on November 13, 2009, and decided to hear the testimony of both children before it made

---

**2.** While "the concept of primary physical custody is not recognized in Missouri," *Robertson*, 228 S.W.3d at 626, it is clear in the context of the trial court's decision that the trial court was not referring to that concept but, rather, to R.H.'s best interest in having Mother exercise more parenting time with him than every other week as provided in the existing joint custody parenting plan.

a final decision regarding custody and support. On November 23, 2009, the case again came on for hearing before the trial court, but apparently no additional evidence was presented by any party. The trial court ordered that Mother submit a proposed judgment on or before December 21, 2009. Mother submitted her proposed judgment on December 15, 2009. It provided that the parties maintain joint legal and physical custody of the children and the alternating-week schedule as to T.H., but as to R.H., the proposed judgment implemented the revised parenting schedule set forth by the trial court in its May 4, 2009, decision.

On February 1, 2010, Father's counsel sent the trial court a letter, with a copy to all other counsel, in which he stated, in pertinent part, the following:

> The Proposed Judgment does not accurately reflect the Court's ruling throughout. The Court's ruling operates to transfer sole physical custody of [R.H.] to [Mother], and leaves intact the previously-existing judgment with respect to [T.H.], that [Father] and [Mother] continue to share joint legal custody of [R.H.], and joint legal and physical custody of [T.H.], and equal alternating week-to-week visitation. The Proposed Judgment is accurate with respect to [T.H.], but is inaccurate with respect to [R.H.]. The Court's ruling effectively directs that [R.H.] live exclusively with [Mother], where he has, in fact, resided, continuously and exclusively, since May, 2008. The Proposed Judgment should reflect this reality. *I would suggest that merely replacing the "joint physical and legal custody" language throughout the Proposed Judgment, as it pertains to [R.H.], to read that [Mother] has sole physical custody of [R.H.].*

(Emphasis added).

The next day, the trial court entered a Memorandum on the record directing Mother's counsel to "prepare a Judgment reflecting the *final change in custodial language* as to [R.H.] awarding Ms. Hall [his] sole physical custody but the parties continue to share joint legal custody. The language as to [T.H.] is acceptable." (Emphasis added). The trial court's judgment, order, and decree of modification, prepared by Mother's counsel as so directed, was entered by the trial court on February 22, 2010, and this appeal timely followed.

### *Standard of Review*

 This Court will affirm a judgment in a custody modification case if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. When there is conflicting evidence, it is in the trial court's discretion to determine the credibility of the witnesses, and accept or reject all, part, or none of the testimony it hears. In assessing the sufficiency of the evidence, we examine the evidence and its inferences in the light most favorable to the trial court's judgment.

*In re D.M.S.*, 96 S.W.3d 167, 171 (Mo.App. 2003) (internal citations omitted).

### *Discussion*

Although Father presents three points relied on for our review, it is unnecessary to address each point individually as all three points rely upon a single contention: Mother failed to present evidence of a *substantial* change in circumstances as required to change R.H.'s physical custody from joint to sole. Because Father invited the error he now challenges, we affirm the trial court's judgment.

 The modification of custody requires a movant to demonstrate both that

"a substantial change has occurred and that a modification of custody is in the best interests of the minor children." *Walker v. Walker*, 184 S.W.3d 629, 632 (Mo.App. 2006); see also section 452.410.1, RSMo 2000. "If the trial court does not find a substantial change of circumstances, it never reaches the best interests issue." *Kinner v. Scott*, 216 S.W.3d 715, 718 (Mo. App.2007). However, "[t]he requirement that the change be substantial is no longer appropriate where simple shifts in parenting time are at issue. Courts should not require a 'substantial' change from the circumstances of the original judgment where the modification sought is simply a rearrangement in a joint physical custody schedule." *Russell v. Russell*, 210 S.W.3d 191, 197 (Mo. banc 2007).

■ In the case at bar, the trial court, in its decision on May 4, 2009, expressly found "no substantial change in circumstances to modify the court's previous award of joint legal and joint physical custody." It then went on to examine the needs and desires of the children due to changes in circumstances, although not substantial, in determining the parenting schedule that would provide for their best interests. The resulting rearrangement of the joint physical custody schedule, although allowing R.H. to reside more often with Mother than with Father, still provided for joint physical custody. *See Potts v. Potts*, 303 S.W.3d 177, 186–87 (Mo.App. 2010); *In re Marriage of House*, 292 S.W.3d 478, 487–88 (Mo.App.2009). As such, the modification did not require proof of a substantial change in circumstances. *Russell*, 210 S.W.3d at 197.

Mother's proposed formal judgment implementing the trial court's written decision as entered on May 4, 2009, used language continuing the parties' joint physical custody of R.H. It was not until Father, in his letter to the trial court on February 1, 2010, objected to that language and requested that the custodial arrangement be termed "sole physical custody" that the trial court changed its description of its rearrangement of the parenting time of the parties' joint physical custody of R.H. to sole physical custody in Mother. The trial court's Memorandum dated February 2, 2010, supports that the use of the "sole physical custody" language in the judgment ultimately entered by the trial court, and now appealed by Father, only occurred as a result of Father's request, as contained in his letter to the trial court the day before, for the trial court to use that specific language in its judgment.

Father now argues on appeal that the trial court erred in granting Mother "sole physical custody" of R.H. "A party cannot lead a trial court into error and then employ the error as a source of complaint on appeal." *First Bank Centre v. Thompson*, 906 S.W.2d 849, 859 (Mo.App.1995) (citing *In re Marriage of Collins*, 875 S.W.2d 643, 648 (Mo.App.1994)). Because Father invited the error of which he now complains in all three of his points relied on, there is nothing for us to review. All three points are denied.

### Decision

The trial court's judgment is affirmed.

BARNEY, P.J., and BURRELL, J., concur.